# In the United States Court of Federal Claims

No. 22-1431

(Filed: April 26, 2023)

|  |  |
|---|---|
| **SHELL U.S.A. INC., et al.**, | Interest as an awardable contractual "charge" |
| Plaintiffs, | |
| **v.** | |
| **UNITED STATES**, | |
| Defendant. | |

Michael W. Kirk, Cooper & Kirk, PLLC, Washington, D.C., for plaintiffs.  With him on the briefs were Vincent J. Colatriano, J. Joel Alicea, and Nicholas A. Varone, Cooper & Kirk, PLLC, Washington, D.C.

Matthew P. Roche, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for the United States.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION & ORDER

LETTOW, Senior Judge.

Plaintiffs Shell U.S.A. Inc., Atlantic Richfield Company, Texaco Inc., and Union Oil Company of California ("the oil companies") have sued the United States seeking, for the third time, indemnification for environmental remediation costs incurred under World War II era production contracts.  This court has twice awarded such costs plus statutory interest under the Contract Settlement Act ("CSA"): once in 2017 for costs incurred through November 30, 2015, and again in 2020 for costs incurred between November 30, 2015, and September 30, 2019.  Compl. ¶¶ 2-3.  The Federal Circuit affirmed both awards.  The oil companies now seek remediation costs incurred after September 30, 2019, as well as CSA interest.  Compl. ¶¶ 4, 41-50.

Pending before the court are plaintiffs' motion for summary judgment as to liability and damages and defendant's cross-motion for partial dismissal.  *See* Pls.' Mot. for Summ. J., ECF No. 6; Pls.' Mem. of Law in Supp. of their Mot. for Summ. J. ("Pls.' Mem."), ECF No. 6-1;

Def.'s Resp. to Pls.' Mot. for Summ. J. and Cross-Mot. for Partial Dismissal ("Def.'s Cross-Mot."), ECF No. 16.  The issues are fully briefed, and a hearing was held on April 20, 2023.  *See* Pls.' Reply in Supp. of their Mot. for Summ. J. and Opp'n to Def.'s Partial Mot. to Dismiss ("Pls.' Reply & Opp'n"), ECF No. 20; Def.'s Reply in Supp. of Def.'s Cross-Mot. for Partial Dismissal ("Def.'s Reply"), ECF No. 25.  The motions are ready for disposition.

The government has conceded liability for all of plaintiffs' claimed costs except for the portion attributable to statutory interest plaintiffs paid years ago under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  Def.'s Cross-Mot. at 1.  Accordingly, the only remaining issue is whether the government must indemnify the oil companies for CERCLA interest.  *See* Hr'g Tr. 4:17-22, 35:6-12 (Apr. 20, 2023), ECF No. 27.  The contractual documents govern this issue.  The court concludes that the government's obligation to reimburse the oil companies for CERCLA costs includes an obligation to pay for the costs attributable to statutory interest.[1]

## BACKGROUND[2]

In 1942 and 1943, the government entered contracts with the oil companies, who agreed to ramp up the production of aviation gas ("avgas") to fuel planes for military, defense, and essential civilian use during World War II.  *See generally* App. to Pls.' Mem. ("Pls.' Mem. App.") at A005-A195, ECF No. 6-2 (avgas contracts).[3]  Because these contracts afforded the oil companies low profit margins, they "contained various concessions," *Shell Oil Co. v. United States* ("*Shell 2014 liability*"), 751 F.3d 1282, 1287 (Fed. Cir. 2014), including the "new-or-additional-charges provision" in which the government promised to pay "any new or additional taxes, fees, or charges, . . . which [the oil companies] may be required by any municipal, state, or federal law . . .  [to] pay by reason of the production, manufacture, sale or delivery of the [avgas]."  *See, e.g.*, Pls.' Mem. App. at A020, A065-66, A116, A163 (emphasis omitted).

---

[1] The history of this case has been thoroughly covered in prior opinions.  *See Shell Oil Co. v. United States*, 80 Fed. Cl. 411 (2008); *Shell Oil Co. v. United States*, 86 Fed. Cl. 470 (2009); *Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012); *Shell Oil Co. v. United States*, 108 Fed. Cl. 422 (2013); *Shell Oil Co. v. United States*, 751 F.3d 1282 (Fed. Cir. 2014); *Shell Oil Co. v. United States*, 130 Fed. Cl. 8 (2017); *Shell Oil Co. v. United States*, 896 F.3d 1299 (Fed. Cir. 2018); *Shell Oil Co. v. United States*, 148 Fed. Cl. 781 (2020); *Shell Oil Co. v. United States*, 7 F.4th 1165 (Fed. Cir. 2021).  Accordingly, the court limits its discussion of background facts to just those necessary for the issues presented here.

[2] The recitations that follow do not constitute findings of fact, but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the briefs.

[3] Plaintiffs attached exhibits as appendices to their opening memorandum and their reply and opposition.  Plaintiffs' appendices are consecutively paginated and will be cited as "Pls.' Mem. App. at [page number]" and "Pls.' Reply & Opp'n App. at [page number]," respectively.

The current dispute arises from new or additional charges associated with efforts to clean up hazardous avgas byproducts. The production of avgas generates alkylation acid and acid sludge (together, "acid waste"). *See Shell 2014 liability*, 751 F.3d at 1284-85, 1288 (quoting the avgas contracts). In performing the contracts, the oil companies increased avgas production and a commensurate amount of acid waste as a result, outpacing existing facilities' capacity to reprocess, transport, and store the excess waste. *Id.* at 1288. After the government refused to construct new reprocessing or storage facilities to meet this increased demand, the oil companies "entered into contracts with an individual named Eli McColl to dispose of the acid waste at what became known as the McColl site in Fullerton, California." *Shell Oil Co. v. United States* ("*Shell 2021 affirmance*"), 7 F.4th 1165, 1168 (Fed. Cir. 2021). The "companies disposed of acid waste at the McColl site from 1942 until shortly after the war ended," and the site was closed in September 1946. *Id.* Clean-up efforts began in earnest after residents complained to regulatory agencies in the late 1970s. These efforts are continuing. *See* Hr'g Tr. 7:22-25.

### A. California CERCLA litigation and prior litigation before this court and the Federal Circuit

In 1991 the United States and the State of California sued the oil companies under CERCLA in the United States District Court for the Central District of California. *See United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1019 (C.D. Cal. 1998), *aff'd in part, rev'd in part*, 294 F.3d 1045 (9th Cir. 2002). Congress enacted CERCLA "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1498 (6th Cir. 1989) (quoting H.R. REP. NO. 96-1016, pt. 1, at 22 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6119, 6125). Section 9607 establishes four categories of costs for which CERCLA violators are liable. 42 U.S.C. § 9607(a)(4)(A)-(D). "The amounts recoverable in an action brought under [section 9607] include interest on the amounts recoverable" under each category at a specified rate that accrues from either "the date payment of a specified amount is demanded in writing" or "the date of the expenditure concerned," whichever is later. 42 U.S.C. § 9607(a)(4).[4]

In the California CERCLA litigation, the district court initially found the oil companies and the United States jointly and severally liable but later allocated all the clean-up costs to the government because "the war caused the problem and like myriad others the burden must rest on the United States." *Shell*, 13 F. Supp. 2d at 1019. The district court held the government was liable for clean-up costs arising from both benzol and non-benzol waste. *Id.* On appeal, the Ninth Circuit affirmed the district court's holding that the government was responsible for the entire cost of cleaning up benzol waste but reversed the lower court's holding that the government was liable for the non-benzol waste. *United States v. Shell Oil Co.*, 294 F.3d at 1048-49. Benzol waste comprised roughly 5.5% of the waste at the McColl site. *Shell 2021*

---

[4] "The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26." 42 U.S.C. § 9607(a)(4). The Environmental Protection Agency collects and publishes historic superfund interest rates. *See* Env't Prot. Agency, *Superfund Interest Rates*, https://www.epa.gov/superfund/superfund-interest-rates (last updated Nov. 3, 2022).

*affirmance*, 7 F.4th at 1168.  Because the remainder was non-benzol waste, "the [o]il [c]ompanies have borne nearly all of the clean-up costs incurred since 1994."  *See id*.

Following remand, the California District Court transferred the oil companies' claims for indemnification to the Court of Federal Claims.  *See Shell 2021 affirmance*, 7 F.4th at 1168.  That court also entered a stay, indicating its decision regarding the oil companies' costs would "be rendered no later than 120 days after the decision by the Court of Federal Claims" resolving the plaintiffs' breach of contract claims.  *See* Order of May 21, 2007, *Shell Oil Co. v. United States*, Case No. 2:91-589 (C.D. Cal.), ECF No. 598.

After voluntarily dismissing their claims in this court to exhaust their administrative remedies for reimbursement, the oil companies re-filed suit.  *See Shell Oil Co. v. United States*, 80 Fed. Cl. 411, 414 (2008), *vacated* 672 F.3d 1283 (Fed. Cir. 2012)*.*  Initially, this court granted summary judgment in their favor and awarded all "costs for the CERCLA cleanup as those costs were 'charges' and 'by reason of' production of the avgas."  *Id.* at 418.  The Federal Circuit vacated that judgment, however, upon finding that the then-presiding judge had a financial conflict of interest.  *Shell Oil Co. v. United States*, 672 F.3d 1283, 1290-94 (Fed. Cir. 2012).  Following remand and reassignment, the court granted summary judgment, this time in the government's favor.  *Shell Oil Co. v. United States*, 108 Fed. Cl. 422, 448 (2013).

The Federal Circuit reversed, holding "[t]he plain language of the new or additional charges provision . . . requires the Government to indemnify the [o]il [c]ompanies for CERCLA costs incurred 'by reason of' the avgas contracts," and remanded for a damages trial.  *Shell 2014 liability*, 751 F.3d at 1293, 1303.

After a damages trial, this court found "'all of the acid waste disposed of at the McColl Site was "by reason of" the Avgas Contracts,' and awarded the [o]il [c]ompanies $99,509,847.32 in damages."  *Shell 2021 affirmance*, 7 F.4th at 1169 (quoting *Shell Oil Co. v. United States* ("*Shell 2017 damages*"), 130 Fed. Cl. 8, 34 (2017), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018)).  This award included two distinct categories of costs and interest on those amounts under the CSA, 41 U.S.C. § 106(f) (repealed 2011).[5]  *Shell 2017 damages*, 130 Fed. Cl. at 38-40.  First, it included $64,219,514.46 in "remediation costs through October 31, 1998" comprised of $18,000,000 the oil companies had already paid to the United States and California under a 1994 consent decree, as well as $46,219,514.46 in additional remediation costs.  *Id.* at 38.  The parties stipulated in 1999 that this $64 million figure constituted "the [o]il [c]ompanies' total claimed response costs (excluding interest but including payments made by the [o]il [c]ompanies to [the government and California]) through October 31, 1998."  Def.'s Cross-Mot. App., at 8, ECF No. 16.  To this

---

[5]  Congress waived immunity for "interest on the amount due and unpaid . . . on any termination claim under a prime contract at the rate of 2 ½ per centum per annum" in the CSA. 41 U.S.C. § 106(f) (repealed 2011).  Although the CSA was repealed and replaced in 2011 by An Act to Enact Certain Laws Relating to Public Contracts, Pub. L. No. 111-350, 124 Stat. 3677 (2011), the oil companies' claims fall within that Act's savings clause.  Pub. L. No. 111-350, § 7(b), 124 Stat. 3677, 3855 (providing that "rights and duties that matured, penalties that were incurred, and proceedings that were begun before the enactment of this Act" survive). Accordingly, the parties do not contest plaintiffs' entitlement to CSA interest.

amount, the court added a total of $30,307,573.22 in interest under the CSA, reflecting an interest rate of 2.5% compounded annually.  *See Shell 2017 damages*, 130 Fed. Cl. at 11, 38-39, 42-43.

Second, the amount this court awarded plaintiffs in 2017 also included $4,982,759.64 in payments the oil companies made to contractors managing clean up and security at the McColl site from June 2002 to November 2015.  *Shell 2017 damages*, 130 Fed. Cl. at 39-40.[6]  This figure included CSA interest on the contractor payments.

Accordingly, this award accounted for 100% of the clean-up costs, plus CSA interest, incurred "through November 30, 2015."  *Id.* at 38-40.  The Federal Circuit affirmed, and the government neither sought rehearing en banc nor petitioned the Supreme Court for a writ of certiorari.  *Shell Oil Co. v. United States* ("*Shell 2018 affirmance*"), 896 F.3d 1299 (Fed. Cir. 2018).

After the Federal Circuit's affirmance, the California District Court lifted the stay and proceeded to determine the oil companies' CERCLA liability for clean-up costs the government incurred.  *See* Order of October 23, 2019, *Shell Oil Co. v. United States*, Case No. 2:91-589 (C.D. Cal.), ECF No. 669; *Shell Oil Co. v. United States*, 506 F. Supp. 3d 1038, 1041, 1051 (C.D. Cal. 2020) (granting the government's summary judgment motion and awarding it $49,861,337.62 in total clean-up costs), *aff'd sub nom. United States v. Union Oil Co. of Cal.*, No. 21-55320, 2022 WL 16731922, at *1 n.1 (9th Cir. Nov. 7, 2022) (upholding the portion of the award attributable to the oil companies except Shell, which did not join the appeal).

Meanwhile, the oil companies returned to this court in 2019 seeking clean-up costs incurred after November 30, 2015.  *Shell 2021 affirmance*, 7 F.4th at 1169.  The court held that "the [o]il [c]ompanies were entitled to indemnification for remediation costs incurred at the McColl site from November 30, 2015 through September 30, 2019, plus [CSA] interest on such costs, accruing through the date of final payment."  *Id.* at 1171.  The government challenged this court's jurisdiction to award pre-judgment CERCLA interest on amounts that had not yet been determined by the Central District of California in the pending CERCLA-related litigation.  This court, however, did not address that matter "because the oil companies aver[red] that they 'have not yet incurred these costs' and thus the 'argument [wa]s premature.'"  *Shell Oil Co. v. United States*, 148 Fed. Cl. 781, 793 n.12 (2020) (quoting the oil companies' brief).  The Federal Circuit once again affirmed.  *Shell 2021 affirmance*, 7 F.4th at 1176.

### B.  Present Litigation

In this round of litigation, the oil companies request $60,685,855.39 plus 2.5% simple interest.  Notice of Additional Incurred CERCLA Charges Sought as Part of Pls.' Mot. for Summ. J. ("Notice of Additional Incurred CERCLA charges") at 4, ECF No. 19.  Shell claims $34,950,898.46; Texaco claims $2,199,462.77; and Union and Atlantic Richfield each claim $11,767,747.08.  *Id.*

---

[6] "The [o]il [c]ompanies d[id] not claim any damages incurred between November 1, 1998 and August 2002."  *Shell 2017 damages*, 130 Fed. Cl. at 39.

These damages include $1,162,052.68 in costs the oil companies paid directly to contractors to remediate the site.  Pls.' Mem. at 12; Pls.' Mem. App. at A384, ¶¶ 11-14.  They also encompass $59,523,802.71 the oil companies paid to California and the United States for clean-up cost those governments incurred.  The latter category arises from the CERCLA damages that the Central District of California awarded to the United States and two consent decrees, one between all the oil companies (including Shell) and California and one between only Shell and the United States.

After the California District Court entered summary judgment in favor of the government in the associated CERCLA action, the oil companies (including Shell) entered a partial consent decree to resolve the remediation costs California claimed ("the California consent decree").  *See United States v. Shell Oil Co.*, No. 2:91-589 (C.D. Cal. April 4, 2022), ECF No. 728; Pls.' Mem. App. at A207-26.  In the California consent decree, the oil companies agreed to pay $8.1 million as reimbursement for their allocable share of the "State's Current Response Costs," which included "certain State costs incurred in connection with [the McColl] Site not previously recovered . . . pursuant to the 1994 Consent Decree . . . plus all interest that has accrued on such costs through December 31, 2019."  Pls.' Mem. App. at A213-15, ¶ 17.k.  This amount includes $4,568,496.70 in CERCLA interest and was paid in April and June 2022.  Compl. ¶ 35 n.4.

Regarding costs owed to the United States, Shell individually entered a partial consent decree with the United States ("the United States consent decree"), while Atlantic Richfield, Texaco, and Union appealed to the Ninth Circuit the judgment awarding these costs.  *See* Notice of Additional Incurred CERCLA Charges at 3.  The Ninth Circuit affirmed the judgment on November 7, 2022.  *Union Oil Co. of Cal.*, 2022 WL 16731922.

In its consent decree with Shell, the United States agreed "not to sue or take administrative action . . . to recover Past Response Costs or Future Response Costs" in exchange for $29,501,511.85.  Pls.' Mem. App. at A233, ¶ 4, A238-39, ¶ 22.  This includes $14,876,493.38 in CERCLA interest.  *Id.* at A233, ¶ 4; Def.'s Cross-Mot. at 6-7.  Shell paid the United States $29,525,188 in satisfaction of this judgment on December 3, 2021.[7]  Compl. ¶ 37.

To satisfy the judgment entered by the California District Court and affirmed by the Ninth Circuit, Texaco paid the United States $1,871,586.10 and Union and Atlantic Richfield each paid $10,013,514.30 in February 2023 — $21,898,614.70 in total.  *See* Notice of Additional Incurred CERCLA Charges at 3-4.  The total amount includes $12,730,048.65 in CERCLA interest.  *See* Pls.' Reply & Opp'n at 3 (indicating the "non-CERCLA statutory interest portion of the additional charges paid" totaled $9,168,566.05).

## STANDARDS FOR DECISION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of

---

[7] The discrepancy between the initial settlement amount and the amount paid later that year reflects post-judgment interest accruing during that period.  *See* Pls.' Mem. App. at A233, ¶ 4; Compl. ¶ 37.

the Rules of the Court of Federal Claims ("RCFC"). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[8] A genuine dispute exists when the finder of fact may reasonably resolve the dispute "in favor of either party." *Id.* at 250.

Regarding the plaintiffs' motion for summary judgment, the movant bears the burden "of identifying the legal basis of its motion" and "pointing to . . . portions of the record" that demonstrate there is no "genuine issue of material fact." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also* RCFC 56(c)(1)(A) (requiring the movant to support its request for summary judgment by "citing to particular parts of materials in the record"). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "If no rational trier of fact could find for the non-moving party, summary judgment is appropriate." *Nat'l Food & Beverage Co. v. United States*, 103 Fed. Cl. 63, 68 (2012) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

Regarding the government's cross-motion for partial dismissal, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction over its claim. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Under the Tucker Act, this court has jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The court lacks subject-matter jurisdiction over claims against the government for interest unless there is a provision within a "contract or Act of Congress expressly providing for payment thereof." 28 U.S.C. § 2516(a). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

## ANALYSIS

At issue is the government's liability for CERCLA interest. Specifically, the parties dispute whether the new-or-additional-charges provision's waiver of sovereign immunity for CERCLA costs includes those attributable to CERCLA interest and the extent to which this issue has been addressed or resolved by this court and the Federal Circuit's prior decisions.[9] The

---

[8] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

[9] The parties also dispute whether the government's sovereign immunity defense is barred by *res judicata*. Plaintiffs contend the government is precluded from raising its defense because this action concerns the same transactional facts as previous rounds of litigation. Pls.' Reply & Opp'n at 10. In their view the 1994 partial consent decree included CERCLA interest and the Federal Circuit relied on this decree in its 2014 liability decision directing this court to enter summary judgment for plaintiffs, and this court relied on it again in its 2017 damages decision. *Id.* at 10-11; Hr'g Tr. 20:15 to 21:25, 26:1-10. The government responds that the transactional facts at issue here are different because its waiver of sovereign immunity for

parties agree on the amount of the total claimed damages that is attributable to CERCLA interest that the oil companies have paid the United States and California.  Def.'s Cross-Mot at 6-7; Pls.' Reply & Opp'n at 3.

Absent express consent, the government is immune from suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Congress alone may waive sovereign immunity.  *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1294 (Fed. Cir. 2002).  If Congress does not waive the government's immunity, federal courts lack subject matter jurisdiction over the affected claims.  *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Waivers of sovereign immunity must be "unequivocally expressed."  *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (quoting *Irwin v. Dep't. of Veterans Affairs*, 498 U.S. 89, 95 (1990)).  "[T]he [g]overnment's consent to be sued 'must be construed strictly in favor of the sovereign.'" *Id.* at 34 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)).  Moreover, "the waiver for sovereign immunity for interest must be distinct from a general waiver of immunity for the cause of action resulting in the damages award against the United States." *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126-27 (Fed. Cir. 2004); *see also* 28 U.S.C. § 2516(a) ("Interest on a claim against the United States shall be allowed . . . only under a contract or Act of Congress expressly providing for payment thereof.").

By enacting the Tucker Act, Congress waived sovereign immunity with respect to "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell*, 463 U.S. 206, 215 (1983).  The Tucker Act does not, however, waive sovereign immunity with respect to interest ("interest immunity").

The government's interest immunity is displaced by contract if a provision "expressly, affirmatively, and unambiguously requires the Government . . . to pay a late fee and a service charge on unpaid amounts due." *DMS Imaging, Inc. v. United States*, 123 Fed. Cl. 645, 659-60 (2015) (holding immunity was waived by a provision establishing "[a] late charge of five percent (5%) of any payment not paid when due . . . plus a service charge of [1.5%] per month . . . shall be made on any portion of the Lessee's outstanding balance which is not paid when due").

A contract that is silent or ambiguous as to the government's obligation to pay interest, however, does not waive interest immunity.  For example, in *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585 (1947), the Supreme Court held that a lease agreement provision in

---

CERCLA interest has not been at issue in prior rounds of litigation.  Def.'s Cross-Mot. at 27.  The government argues that this court's 2017 damage award was based not on the 1994 consent decree, but on a 1999 stipulation in which the parties agreed the amount then at issue "excluded any interest." *Id.* at 24-26 (quoting Pls.' Reply & Opp'n App. at A416, ECF No. 20-1); Def.'s Reply at 7-8.  The government further contends that the 1994 consent decree provides sparse evidence regarding whether prejudgment interest was included and, if so, how such interest was calculated or whether it was actually paid.  Def.'s Reply at 7; Hr'g Tr. 33:9-25.  The court does not resolve the applicability of *res judicata*.  Independent of whether the government's defense is barred, plaintiffs' claim for CERCLA interest is a claim for CERCLA costs that falls within the government's sovereign immunity waiver in the new-or-additional-charges provision.

which the government promised to pay plaintiff "just compensation" did not waive interest immunity.  It explained that the "[m]ere use of the term 'just compensation,' without more, is no substitute for an express provision for interest."  *Id.* at 590.

At issue here is the scope of the new-or-additional-charges provision:

> [The United States] shall pay[,] in addition to the prices as established . . . any new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which [the oil companies] may be required by any municipal, state, or federal law in the United States or any foreign country to collect or pay by reason of the production, manufacture, sale or delivery of the commodities delivered hereunder.

Pls.' Mem. App. at A020.  The parties dispute whether CERCLA interest is included as an additional "charge."

According to plaintiffs, the new-or-additional-charges provision "affirmatively, unambiguously, and explicitly authorize[s] the reimbursement of interest . . . without using the magic word 'interest.'"  Pls.' Reply & Opp'n at 8-10.  Plaintiffs argue that "CERCLA statutory interest is a 'CERCLA cost[]' and is thus a 'recoverable charge.'"  *Id.*  Plaintiffs cite prior opinions in which "the Federal Circuit has already held that 'charges' includes '*all* CERCLA costs,' without excluding CERCLA statutory interest."  *Id.* at 9 (quoting *Shell 2018 affirmance*, 896 F.3d at 1307).  Moreover, in holding "CERCLA charges in this case" were encompassed by the new-or-additional-charges provision, the Federal Circuit cited CERCLA section 9607(a)(4) — the same section that expressly includes interest as an amount recoverable.  Pls.' Mem. at 30 (quoting *Shell 2014 liability*, 751 F.3d at 1292-96).  Indeed, "the Federal Circuit repeatedly described the CERCLA charges indemnified under the avgas contracts without distinguishing between 'interest' charges and 'non-interest' charges."  *Id.* at 29.

In response, the government argues that the new-or-additional-charges provision cannot constitute a waiver of interest immunity because it "does not even mention interest and so 'charges' cannot constitute consent to reimburse pre-judgment interest."  Def.'s Cross-Mot. at 13-14.  Regarding the prior decisions, the government maintains the "Federal Circuit never had occasion to consider" whether the-new-or-additional charges provision "included CERCLA interest, much less the dispositive issue of sovereign immunity."  *Id.* at 19.  Specifically, "the Federal Circuit's statement that 'charges' included CERCLA costs cannot be read to imply interest" because "costs under CERCLA do not include interest."  *Id.*  Moreover, the Federal Circuit's reference to the CERCLA provision discussing "interest on the amounts recoverable," 42 U.S.C. § 9607(a)(4), "was only to demonstrate that CERCLA costs were charges under the avgas contract[s], not that interest was includable as a cost under CERCLA."  Def.'s Cross-Mot. at 19.

The new-or-additional-charges provision is broad on its face.  It applies to "any new or additional taxes, fees, or charges" the oil companies could be required to pay by "any municipal, state, or federal law in the United States."  Pls.' Mem. App. at A020.  The Federal Circuit has held the provision unambiguously includes all CERCLA costs.  *See Shell 2018 affirmance*, 896 F.3d at 1307, 1316.  The Federal Circuit rejected the government's attempts to limit this

provision to include only charges imposed by duly constituted and authorized governmental tax authorities, *Shell 2014 liability*, 751 F.3d at 1293-94, as well as the government's efforts to exclude environmental liability or damages sounding in tort, *id.* at 1294-96.

Moreover, the Federal Circuit's reason for holding the new-or-additional-charges provision includes CERCLA costs generally applies with equal strength to CERCLA interest more specifically: "The [o]il [c]ompanies agreed to the avgas contracts' low profits in return for the [g]overnment's assumption of risks outside the [o]il [c]ompanies' control" and "[t]he CERCLA charges in this case are one such risk." *Shell 2014 liability*, 751 F.3d at 1296. Just as plaintiffs "could not have contemplated . . . CERCLA charges at the time they entered into the contracts" they could not have contemplated CERCLA interest charges. *Id.*

The government misconstrues the CERCLA interest costs here as prejudgment interest. Under the Federal Circuit's holdings, the CERCLA interest in question is more accurately viewed as a remediation cost. The accrual of CERCLA interest is not prejudgment interest because it is unaffected by the government's refusal to reimburse the oil companies. The costs originated as a claim brought by the United States against the oil companies in the California CERCLA litigation, and they started accruing once the government began incurring clean-up costs. *See* 42 U.S.C. § 9607(a); *Shell*, 506 F. Supp. 3d at 1041, 1049. Interest ceased accruing when the California District Court entered judgment for the government in 2020. *See id.* These costs were accordingly not triggered by the government's breach and will not be capped at the time this court enters judgment. Because the oil companies have already paid the government these costs, at this point in the proceedings, the CERCLA interest charges plaintiffs claim are fixed and distinct from the breach of contract claims now at issue.

The liability provision of CERCLA confirms interest is included as a CERCLA "charge." The government maintains that CERCLA distinguishes between costs recoverable and interest on those costs. Def.'s Cross-Mot. at 18. Section 9607, however, states that "amounts recoverable in an action under this section shall include interest on the amounts recoverable." 42 U.S.C. § 9607(a)(4). Put differently, CERCLA interest costs are expressly included in the definition of amounts recoverable. Taking the Federal Circuit's holding and Section 9607's language together, CERCLA charges cannot be plausibly read to exclude CERCLA interest costs.

This reading is further supported by precedents addressing the scope of the government's waiver of immunity for CERCLA liability set forth in section 9620. There, Congress provided that "[e]ach department, agency, and instrumentality of the United States . . . shall be subject to, and comply with, this chapter in the same manner and to the same extent . . . as any nongovernmental entity, including liability under section 9607." 42 U.S.C. § 9620(a)(1). Courts have subsequently held that this waiver of immunity for "liability under [section] 9607" waives immunity for interest charges under that provision as well. *See Shell*, 294 F.3d at 1053-54 ("hold[ing] that CERCLA's waiver of sovereign immunity is coextensive with the scope of liability imposed by 42 U.S.C. § 9607"); *Santa Fe Pac. Realty Corp. v. United States*, 780 F. Supp. 687, 696-97 (E.D. Cal. 1991) (holding that CERCLA sections 9607 and 9620, read together, constitute an "explicit and unambiguous" waiver of sovereign immunity for claims of CERCLA interest). The government waived its immunity for Section 9607 both by statute and by including the new-or-additional-charges provision in the avgas contracts. In this case, the

statutory waiver is inapplicable because the Ninth Circuit ultimately held the government was not liable under CERCLA for clean-up costs associated with the non-benzol waste at issue. *Shell*, 294 F.3d at 1048-49. The new-or-additional-charges provision, however, does apply and establishes the government's liability for CERCLA charges, including interest.

The government surveys precedent prohibiting plaintiffs from circumventing the no-interest rule by characterizing a claim for interest as a claim for damages. Def.'s Cross-Mot. at 21-23; Def.'s Reply at 1-3. But these precedents do not apply here for two reasons. First, the avgas contracts contain an express waiver of immunity for CERCLA charges, and CERCLA establishes that interest is recoverable as a charge. Second, these damages are not measured according to the timing of the government's action constituting breach, *i.e.*, its refusal to indemnify the oil companies. In contrast, in the cases the government cites, the plaintiff sought to recover interest payments on loans or other financing vehicles made necessary by the government's breach of contract, and the plaintiff calculated the amount of interest that accrued based on the timing of either the breach or the plaintiff's efforts to mitigate the breach.

In *J.D. Hedin Construction Company v. United States*, the plaintiff brought an action for breach of contract, alleging the government wrongfully terminated a contract. 197 Ct. Cl. 782, 786-88, 806-07 (1972). Among other compensatory damages, plaintiff sought interest payments it made on a loan it had secured to finance its performance. The court held the no-interest rule barred the plaintiff from recovering "[i]nterest paid on bank loans made because of financial stringency resulting from a breach by the [g]overnment of a contract between it and the borrower," even if it were to be characterized as a claim for damages. *Id.* at 807-10. The contract also lacked a provision waiving interest immunity. *See id.* at 790, 803.

In *Energy Northwest v. United States*, the plaintiff sought to distinguish "between interest 'on' a claim" that is prohibited by the no-interest rule and "interest 'as' a claim." 641 F.3d 1300, 1310 (Fed. Cir. 2011). There, the government agreed to accept and dispose of spent nuclear fuel and the utilities agreed to pay into a Nuclear Waste Fund. *Id.* at 1302. The government breached the contract by refusing to accept spent nuclear fuel. *Id.* at 1303. As a result, the plaintiff elected to build its own facility. *Id.* at 1304. It took out an advance with a bank and issued utility bonds to finance the project, incurring "about $6 million in interest charges." It then sought these costs as mitigation damages in its breach of contract action. *See id.*; *see also Energy Nw. v. United States*, 91 Fed. Cl. 531, 559 (2010) (characterizing the interest claimed as "costs incurred clearly 'in connection with' its legal obligation to mitigate damages in light of the [g]overnment's impending breach regarding the 1998 start of [spent nuclear fuel] acceptance"), *aff'd in part, vacated in part, rev'd in part*, 641 F.3d 1300 (Fed. Cir. 2011). The Federal Circuit concluded these costs were barred because the contract lacked any clause that expressly waived interest immunity. *Energy Nw.*, 641 F.3d at 1311-13.

Correlatively, in *England v. Contel Advanced Systems, Inc.*, the plaintiff sought compensatory damages in the form of "interest it paid on the extra money it was forced to borrow as a result of the [government]'s delay in reconciling the [contract] price." 384 F.3d 1372, 1379 (Fed. Cir. 2004). Again, the Federal Circuit determined the contract did not contain a clause waiving interest immunity. *Id.* at 1379-81. While interest was a component of the total contract price, the interest plaintiff sought arose from a loan plaintiff used to finance its own performance. The Federal Circuit explained the waiver for claims of interest in the

11

contract-price provision did not extend to plaintiff's third-party loans because the contract was "silent as to the method by which [plaintiff] was to fund the project." *Id.* at 1380.

Here, unlike in *J.D. Hedin*, *Energy Northwest*, and *England*, the avgas contracts expressly waive immunity for "charges," and the Federal Circuit has held "charges" includes CERCLA costs. One such cost is statutory interest. Also, unlike the above cases, CERCLA interest is a cost measured independently from the government's breach.[10]

The plaintiffs are entitled to recover the amount attributable to CERCLA interest because it falls within the waiver of sovereign immunity contained in the new-or-additional-charges provision.

## CONCLUSION

Accordingly, the oil companies' summary judgment motion is GRANTED and the government's cross-motion for partial dismissal is DENIED. The government is liable to plaintiffs in the amounts specified below plus interest on these amounts accruing from the time the costs were incurred through the date of final payment, at the rate and terms specified in the CSA, 41 U.S.C. § 106(f) (2010). The Clerk is directed to enter judgment in favor of plaintiffs accordingly:

| | |
|---|---|
| Shell | $34,950,898.46 |
| Union | $11,767,747.08 |
| Atlantic Richfield | $11,767,747.08 |
| Texaco | $2,199,462.77 |

Plaintiffs are awarded their costs of suit.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[10] Both parties also discuss *Bell v. United States*, 186 Ct. Cl. 189 (1968), and subsequent jurisprudence holding that the government consents to suit if it includes in a contract a changes clause allowing a contracting officer to make certain changes and commensurate equitable adjustments. This precedent is inapposite because it applies only if the contract contains a changes clause, and the new-or-additional-charges provision at issue here is not such a clause. *See Energy Nw.* 641 F.3d at 1310-13.